```
            UNITED STATES DISTRICT COURT FOR THE
                MIDDLE DISTRICT OF PENNSYLVANIA

HUBERT FONT,                     :
                                 :
        Plaintiff                :    No. 4:CV-05-0277
                                 :
   vs.                           :    (Complaint Filed 02/08/04)
                                 :
                                 :    (Judge Muir)
PENNSYLVANIA STATE POLICE,       :
et al.,                          :
                                 :
        Defendants               :
```

**ORDER**

March 5, 2008

**BACKGROUND**

Plaintiff, an inmate presently confined in the State Correctional Institution, Albion, Pennsylvania, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. He complains of incidents which occurred during his arrest on June 20, 2003.

On June 20, 2005, plaintiff filed Font v. Luzerne County, Civil No. 4:05-CV-1226. A filing of an amended complaint by plaintiff on August 29, 2005 in Font, Civil No. 4:05-CV-1226, and a motion to dismiss same, prompted an Order dated July 19, 2006, consolidating Font v. Luzerne County, Civil No. 4:05-CV-1226 into Font v. Pennsylvania State Police et al, Civil No.

4:05-CV-0277, pursuant to Federal Rule of Civil Procedure 42(a); granting the motion to dismiss filed by the Commonwealth of Pennsylvania and defendant Wetzel; dismissing the amended complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), as to defendants, Luzerne County and Gene Fishy; and granting plaintiff thirty (30) days from the date of the order to properly provide the names of the John Doe defendants referred to in the amended complaint. (Doc. No. 44).

By Order dated December 7, 2007, plaintiff's amended complaint was dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), as to defendant Nurse Sherry, and Correctional Officers, defendants John Doe Nos. 1-4, Physician Assistant, John Doe No. 5, and Doctor, John Doe No. 6, were dismissed from the action as a result of plaintiff's failure to identify the John Doe defendants.  The only remaining defendant is Trooper Corey D. Wetzel.

Presently before the Court is defendant Wetzel's motion for summary judgment.  (Doc. No. 63).  The motion is fully briefed and is ripe for disposition.  For the reasons set forth below, defendant's motion will be granted.  Also pending before the Court is plaintiff's motion for reconsideration of this Court's

2

December 7, 2007 Order, dismissing defendant Nurse Sherry from the complaint. (Doc. No. 71). That motion will be denied.

**Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

3

party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita

4

Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**Statement of Facts**

The following material facts have been derived from the pleadings, declarations and exhibits submitted.

On June 20, 2003, Font was arrested by an unidentified Pennsylvania State Police Trooper, who was "not in uniform and failed to identify himself as a police officer." (Doc. No. 1, complaint).  Plaintiff claims that this officer "entered [his] house asked [him] who [he] was and put his hand on [plaintiff] in an aggressive and threatening manner."  Id.  Because plaintiff did not know he was a police officer and was "in fear for [his] safety [he] began to fight with him" and a "brief struggle ensued during which a second man put his hands on

5

[plaintiff] and a third came in the back door." Id. Plaintiff claims that "when [he] saw the other two had uniforms on and that they were the police, [he] immediately stopped fighting and did not resist arrest." Id. The police allegedly "drug [plaintiff] outside and threw [him] face down into an asphalt driveway, then turned [him] over and sprayed [him] with pepper spray", even though he "was not resisting or fighting with them when they sprayed [him] and it was not necessary." Id.

Plaintiff was then taken to the Pennsylvania State Police barracks where a plain clothes officer "came in and made a remark about [plaintiff] fighting with the Trooper who arrested [him] and began to kick [plaintiff] in the head and beat [him] severely" while still handcuffed and shackled. Id. Font states that "there were three other troopers present who watched the assault and did nothing to stop it." Id.

Font claims that after the officer was done assaulting him, and the officer still had his hands on the plaintiff, but not striking him, defendant Wetzel came through the door and asked what was going on. (Doc. 66, Ex. A, Font Deposition at pp. 12, 13). The officers responded to Wetzel's question as to what was going on with "nothing", or some other glib response. Id. at p.

6

14. Wetzel then left the room. Id. Font cannot testify whether Wetzel witnessed the assault as plaintiff was not able to see Wetzel through the open door while he was being assaulted. Id. at p. 17. After Wetzel left the room in which plaintiff was assaulted, plaintiff was not subjected to any further assault. Id. at p. 16. Following the assault, Font was visibly wounded, bleeding and shaking. Id. at p. 15.

Font was then processed at the station and arrangements were made to have him taken to Luzerne County Correctional Facility. Id. at p. 14. Wetzel was the trooper assigned to transport Font to the prison. Id. at p. 14. During the trip only Wetzel and Font were in the car together. Id. Font told Wetzel that he had been assaulted and Wetzel responded by saying something like "some thing have to be overlooked." Id. at p. 15. During the trip Font did not ask (or tell) Wetzel to take him to a hospital. Id. at pp. 15, 16. He only told Wetzel that he was hurt and Font thought somebody needed to see him. Id.

During the trip to the Luzerne County Correctional Facility, Font was conscious, able to communicate with Wetzel and able to understand what Wetzel was saying. Id. at pp. 21, 22. Shortly before arriving at the prison Font was shaking, which he

7

believes was a seizure. Id. Although shaking, Font did not injure himself or suffer any further injury as a result. Id. at pp. 22-25.

Font and Wetzel arrived at the Luzerne County Correctional Facility at approximately 5:50 p.m. Id. at p. 17. Upon their arrival, Wetzel was asked by a nurse at the facility whether Font had been given any medical attention and Wetzel replied that yes, plaintiff had been taken care of. Id. at p. 23. The nurse asked Wetzel where the paperwork was and Wetzel replied that he did not get any. Id. at p. 23. Wetzel then turned Font over to the custody of the Luzerne County prison. Id.

Font was then processed into the Luzerne County Correctional Facility and was taken to the infirmary. Id. at p. 24. Font's prison medical records reflect that at the time of intake Font had an abrasion to his right cheek, a laceration on his right ear and red marks on his neck. (Doc. 66, Ex. B, medical records at pp. 27, 28, 30). Plaintiff told the nurse that he was having seizures, although he was not having seizures at that time. (Doc. 66, Ex. A, Font Deposition at p. 24. The nurse then cleaned up his cuts and bruises. Id. at p. 25.

8

Wetzel admits that at the time he transported Font to the prison Font had superficial scrapes and bruises from resisting arrest, but that they were not sufficiently severe to warrant taking him to the hospital. (Doc. 66, Ex. C, Wetzel's Response to Plaintiff's First Set of Interrogatories at ¶¶ 9, 13, 14; Ex. D, Wetzel's Response to Plaintiff's Second Set of Interrogatories at ¶¶ 1, 5, 6). Wetzel denies any knowledge of the alleged assault, denied that Font told him about the assault during transporting him to the prison, and denies that he had the conversation with the intake nurse that Font alludes to. (Doc. 66, Ex. C at ¶¶ 10, 11, 15, 16, 17, 18, 25, 26).

Plaintiff contends that, even though he was not further assaulted after Trooper Wetzel entered the room, Trooper Wetzel "allowed plaintiff to be left at serious risk of further assault and injury" and that Wetzel's failure to report this alleged assault "violated plaintiff's civil rights pusuant (sic) to 42 U.S.C. 1983 and the 8th and 14th amendment of the U.S. constitution as well as other state and federal laws. (Doc. 74, Plaintiff's brief in opposition). He further claims that his need for medical attention during the trip to the prison was so

9

obvious that even a lay person would have known that medical attention was needed. Id.

**Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

The record does not support plaintiff's claim that Trooper Wetzel "failed to intervene" or "allowed plaintiff to be left at serious risk of further assault and injury." While defendant Wetzel concedes that he escorted plaintiff from the State Police Barracks to the Luzerne County Correctional Facility, he vehemently denies that he witnessed an assault or physical altercation of any type. In fact, plaintiff's own testimony is that he could not see Wetzel through the open door of the room that he was in and that Wetzel did not enter the room until after the assault. There is no evidence of record that Trooper

Wetzel was aware that plaintiff was being assaulted by the officers in the room. Thus, the record before the court does not establish the requisite personal involvement in the complained of conduct. Nor does it support any argument Plaintiff may be making that Trooper Wetzel failed to intervene.

To maintain a claim for "failure to intervene", a plaintiff must establish Trooper Wetzel's (1) presence at the scene, (2) knowledge that a constitutional violation was occurring, and (3) the existence of a realistic opportunity to intervene. See Smith v. Mensinger, 293 F.3d 641, 650-51. In Mensinger, the United States Court of Appeals for the Third Circuit Court dealt with a situation in which the plaintiff had his back to the defendant prison officers while he was being beaten. The Court of Appeals held that, although plaintiff could not determine the specific participation of each officer, the fact that the named officer-defendants were in the vicinity when plaintiff alleged to have been beaten was sufficient to defeat summary judgment on plaintiff's Eighth Amendment claim for excessive use of force. Unlike the Correctional Officer in Mensinger who actually witnessed the beating of the plaintiff and did nothing to intervene, the record in this case clearly establishes that

11

Trooper Wetzel was not in the room to observe what was happening. Thus, given Trooper Wetzel's lack of presence on the scene and knowledge of what was occurring, it cannot be concluded that Trooper Wetzel failed to intervene.

Moreover, there is no medical evidence of the assault. Plaintiff claims that he "spent several days following with blurred vision and months with bad tremors and headaches" and "was diagnosed with severe and permanent nerve damage as a result of the beating and [he] continue(s) to have pain, numbness and weakness in (his) extremities, blurred vision and headaches and (he is) still being treated for the effects of the assault." (Doc. No. 1, complaint at p. 3). However, plaintiff's medical records demonstrate that during his approximate year long incarceration in the Luzerne County Correctional Facility, he never once complained about, or put any prison personnel on notice that he was having any type of seizures, blackouts, blurred vision, or severe pain related to his June, 2003 arrest. (See Doc. 66, Ex. B, medical records). Nor does he submit any medical records that document treatment for any of these injuries. Further the ailments for which he was treated, an abrasion to his right cheek, a laceration on his

12

right ear and red marks on his neck, are not consistent with the brutal beating plaintiff alleges.

When faced with a summary judgment motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. Fed. R. Civ. P. 56(e); see Celotex, 477 U.S. at 322-23 (1986). "Such affirmative evidence--regardless of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001)(quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Only if this burden is met can the cause of action proceed. Anderson, 477 U.S. at 250-57 (1986). As the Supreme Court recently held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S.Ct. 1769, 1776 (2007). Here, plaintiff's version of what happened "is so utterly discredited by the record that no reasonable jury could have believed him." Id.

13

In light of the absence of an eyewitness account, corroborating medical or other documentation or other supporting evidence, no jury could reasonably find that defendant Wetzel violated plaintiff's right against excessive use of force on June 20, 2003. Accordingly, Trooper Wetzel is entitled to summary judgment.

**Motion for Reconsideration**

On December 26, 2007, Font filed a motion for reconsideration of this Court's December 7, 2007 Order dismissing Nurse Sherry from the complaint. (See Doc. No. 61). Plaintiff claims that the Court erred in dismissing Nurse Sherry because "he had a serious medical need for which Nurse Sherry failed to provide plaintiff with access to a physician placing plaintiff at risk of permanent injuries from his head, neck, and back injuries." (Doc. No. 71, motion for reconsideration). Plaintiff further contends that Nurse Sherry was prematurely dismissed from the action as plaintiff was "seeking an order of the court to compel Luzerne County Prison officials to supply Nurse Sherry's full name for the purpose of submitting interrogatories to Nurse Sherry." Id.

14

A motion for reconsideration is a device of limited utility. It may be used only to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986); Massachusetts Mutual Life Insurance Co. v. Maitland, Civil No. 87-0827 (M.D. Pa. March 1, 1989)(Rambo, J.). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999)(citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "...misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." See Rohrbach v. AT & T Nassau Metals Corp.,

15

902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996), quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus. Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995).

Upon review of the Court's Order dismissing Nurse Sherry, the following was concluded:

> Assuming, without deciding, that plaintiff's medical needs were serious in the constitutional sense, the allegations in the complaint clearly illustrate that plaintiff received medical attention and medical accommodations. At best, plaintiff's complaint demonstrates his disagreement with Nurse Sherry taking him to the prison medical department and treating him, as opposed to having him transported to a hospital. Plaintiff's disagreement with Nurse Sherry's treatment, however, does not serve as a predicate to liability under § 1983. See, White vs. Napoleon, 897 F.2d at 108-110 (3d Cir. 1990)(No deliberate indifference claim is stated when a doctor disagrees with the professional

16

> judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail vs. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that Nurse Sherry intentionally withheld medical treatment from plaintiff in order to inflict pain or harm upon plaintiff. Farmer; Rouse. Thus, the allegations in the plaintiff's complaint amount to nothing more than plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under § 1983, Hudson vs. Palmer, 468 U.S. 517 (1984), plaintiff's civil rights complaint fails to articulate an arguable claim against Nurse Sherry. See White, 897 F.2d at 108-110.

(Doc. No. 61).

On January 25, 2008, in responding to plaintiff's motion to compel, defendant Wetzel supplied plaintiff with the Declaration of Carleen Kendig, the intake nurse on duty at the Luzerne County Correctional Facility on June 20, 2003. (Doc. No. 78, Ex. 3). Ms. Kendig's Declaration reveals that she was the nurse on duty at the time Font was brought into the prison and in examining him found the following:

> Besides a review of the notes that I wrote at the time Mr. Font was looked at by myself, I have an independent recollection of him and the only apparent injuries Mr.

>   Font had at that time were scrapes and abrasions, a small amount of bleeding around his right ear and redness around his neck – these are the injuries I documented in Mr. Font's medical records at the time.
>
>   The only medical treatment which was necessary for Mr. Font at that time was to clean up the scrapes and abrasions the he suffered from.

Id. Plaintiff has not challenged this declaration or submitted any medical evidence to the contrary.  Thus, based on the foregoing, the Court finds that its Order of December 7, 2007, is not troubled by manifest errors of law or fact and Font has not presented anything new, which if previously presented, might have affected our decision. Consequently, Font's motion for reconsideration will be denied.

**IT IS HEREBY ORDERED THAT:**

1.  Defendant Wetzel's motion for summary judgment (Doc. No. 63) is **GRANTED**.  Judgment is hereby entered in favor of Defendant, Trooper Wetzel and against the plaintiff.

2.  Plaintiff's motion for reconsideration (Doc. No. 71) is **DENIED**.

3.  The Clerk of Court shall **CLOSE** this case.

4.  Any appeal from this order will be deemed frivolous, without probable cause, and not taken in good faith.

                              s/Malcolm Muir
                              MUIR
                              United States District Judge